JENNESS N. MADDEN *v.* FRED G. SPAULDING.

November Term, 1919.

Present:   WATSON, C. J., POWERS, TAYLOR, and MILES, JJ.

Opinion filed May 22, 1920.

*Petition for New Trial—Newly Discovered Evidence—Facts Within Petitioner's Knowledge at Time of Trial—Facts Which Could Have Been Elicited by Proper Cross-examination.*

1.   In a petition for a new trial on the ground of newly discovered evidence, where it appears that at the time of the trial petitioner must have known of the matters alleged in the affidavits as newly discovered evidence, the affidavits form no proper basis for a new trial on that ground.

2.  Where, by proper cross-examination, all the facts shown by the
    plaintiff's deposition attached to defendant's petition for a new
    trial might have been elicited, such facts do not form a proper
    basis for granting a new trial on the ground of newly dis-
    covered evidence.

ACTION OF CONTRACT.  Trial by jury at the October Term,
1918, Windsor County, *Slack,* J., presiding.  Verdict and judg-
ment for the plaintiff.  The defendant excepted.  The defend-
ant brought his petition to the Supreme Court for a new trial on
the ground of newly discovered evidence.  On hearing the de-
fendant made no claim on his exceptions, but relied solely upon
his petition for a new trial.  The opinion states the case.

*Ernest E. Moore* for the defendant.

*William Batchelder* and *Charles Batchelder* for the plaintiff.

WATSON, C. J.  No claim is made upon the exceptions taken
during the trial.  The case presented in this Court rests solely
on defendant's petition for a new trial on the ground of newly
discovered evidence (1) relative to the quantity of stretchers
made by Clarence E. Pinney and had by the plaintiff, and (2)
as to missing page 127 of plaintiff's account book, marked Plain-
tiff's Ex. 4, and the fraud and deceit practiced by him in keep-
ing that page out, and in testifying that pages 158 and 198 con-
tain a true account of all the dicker between him and Pinney.

The case was brought to recover the balance claimed by plain-
tiff to be due from defendant on an account covering more than
twenty years, and consisting of many items of both debit and
credit.  At the beginning of the trial, such concessions were
made on both sides as resulted in confining the evidence to a very
few items, concerning which there was dispute.

The principal contention in the case was, whether the de-
fendant was entitled to credit for the sum of $1,039.12, named
in a paper marked Defendant's Ex. F, reading as follows:

"West Bridgewater, Vt.        190

"F. G. Spaulding:

"I have looked over with C. E. Pinney and if thare not a
mistake thare is credited to you 1,039 12/100.

(Signed) "J. N. Madden."

This paper was delivered by Pinney to the defendant on May 9, 1904. Defendant claimed at the trial, and his evidence tended to show, that it was drawn up by the plaintiff and given to Pinney, so the latter might deliver it to the defendant for the purpose of showing the amount of credit given him on account by the plaintiff for stretchers received from Pinney, who was then owing defendant and paying him in stretchers delivered to the plaintiff, by whom they were to be credited to defendant, all parties treating the paper as cash. Defendant introduced evidence to the effect that for several years, ending in 1904, he furnished stock for Pinney to make into chair stretchers, and the plaintiff had all the finished product by purchase from Pinney.

The plaintiff admitted giving the paper to Pinney, but denied that it was for the purpose claimed by the defendant. Plaintiff asserted, and his evidence tended to show, that he paid Pinney (in account) for all the stretchers received of him; and that he made the paper at Pinney's request for him to take to the defendant, as showing the number of stretchers Pinney had made, in settling with the defendant for the stock furnished by him.

[1] The affidavits of Ernest Pinney, Frank Lombard, Edmund Hadley and Lewis Hadley, are attached to the petition as containing newly discovered evidence tending to show that the affiants delivered stretcher logs at Clarence E. Pinney's mill prior to May 9, 1904, which, when manufactured, would produce stretcher rounds equal to the rounds appearing on pages 158 and 198 of Ex. 4, (which pages contain plaintiff's account with Pinney,) and, in addition thereto, an amount which would require a further credit of at least $1,039.12, the sum stated in Ex. F, it appearing that the plaintiff had all the rounds made at the Pinney mill. It is stated in the petition that the information that these affiants drew in most of the stretcher logs delivered at that mill, and that they had records thereof as kept at the time, first came to the defendant on or about May 5, 1919, and not earlier. The petition is dated May 13, 1919, and is subscribed and sworn to by the defendant as petitioner. But the oath of the defendant in this regard does not give his statement much credence when it is seen by the affidavit of Ernest Pinney of Bridgewater, that the logs he delivered at the Pinney mill in 1901, 1902, and 1903, though sold by him to Clarence Pinney,

were paid for by the defendant; and by the affidavit of Frank
Lombard of Sherburne, that the logs therein mentioned were sold
to Clarence Pinney and delivered at his mill in the same three
years, but the defendant, under some arrangement between him
and Pinney, paid the affiant, and the affiant and one Hill, for
putting them in. In such circumstances, the facts stated in
these two affidavits do not in any legal sense constitute newly
discovered evidence, and can form no basis for a new trial.
Moreover, both affiants were witnesses at the trial and gave
testimony; but their attention was not called to the matters men-
tioned in the affidavits.

Edmund S. Hadley and Lewis Hadley, both of Sherburne,
make a joint affidavit in which they state that during the year
1902 they sold to Clarence E. Pinney, and delivered at his mill,
thirty cords and sixty-five feet of hardwood stretcher logs other
than ash, and have their original book showing this fact; that the
first time in recent years they have given this information to any
one was on May 6, 1919, when they told Frank W. Spaulding of
Bridgewater, who is a son of the defendant. It appearing from
defendant's evidence that in the year 1902, he furnished the logs
to Clarence E. Pinney out of which the latter manufactured
stretchers, and from the affidavits of Ernest Pinney and Lom-
bard that the defendant paid them, severally, for the logs sold
and delivered to Clarence E. Pinney during the three years 1901,
1902, and 1903, and it being nowhere shown that defendant did
not, in the same manner, have to do with the Hadley logs de-
livered at that mill, and further in view of the fact that the de-
fendant's denial of information that logs were so delivered at
Pinney's mill by Ernest Pinney, by Lombard, and by the Had-
leys, is by a single sentence applicable alike to them all, we are
not satisfied that he did not have similar knowledge of the logs
delivered by the Hadleys as he did of those delivered by the
other affiants. In this respect, the three affidavits must be
treated alike, as forming no proper basis, as newly discovered
evidence, for a new trial. *Rawleigh Co.* v. *Pierce, Hazen &
Huntley*, 92 Vt. 44, 102 Atl. 96.

Affiant Colton testifies only as to the number of stretchers
a cord of stretcher timber of average quality would produce.
Evidence of this nature has a bearing, but no claim is made for
it as newly discovered.

In his brief defendant says no one could anticipate that the plaintiff would repudiate paper, Ex. F, in any such manner, and that, at the trial, it was a surprise to the defendant. The meaning of this is not clear, it appearing from the transcript that before this suit was brought, and a year or more before the trial, in looking over their accounts and trying to settle the matter between them, the plaintiff denied owing anything by virtue of that paper, and also refused to allow anything as credit to the defendant. And in discussing before the court the matter of a delay suggested by plaintiff's attorney to give time to investigate further relative to the purpose of giving this particular paper, defendant's counsel, opposing such suggestion, stated that ever since defendant's answer was filed, plaintiff's attorneys had had notice of defendant's claim ''and have had ample opportunity to prepare their claim as we have our defence. They have had their books and we have had ours, and there is nothing in the nature of a surprise that I can ascertain.'' Again, in the same discussion, defendant's counsel said the plaintiff went up to see defendant in December, 1916, and the paper was shown to him; that plaintiff said he signed it, but ''that he had paid this money to this man Pinney, and they dropped all matters simply because Mr. Madden would not allow that credit contained on that paper.''

[2] The remaining question to be considered relates to the so-called missing page 127 of the plaintiff's account book. The affidavits of the defendant and of both of his attorneys in the case, show in effect that neither of them discovered that page 127 was missing until the book came into their hands in April, 1919, to use in preparing the case for trial on the exceptions. The attorneys say they had had no opportunity to examine the book previous to that time, except as it was passed over to them for the purpose of cross-examination, during the trial.

As before observed, pages 158 and 198 were in evidence as Plaintiff's Ex. 4. When so in the case, defendant's counsel had the same right to examine the book as did the other side, and there is nothing of record showing that all reasonable opportunity, indeed, all the opportunity they desired, was not accorded them. On page 198, in about the middle of the second column, and surrounded by a pencil mark, are written in pencil words, letters, abbreviations, and figures, as follows: ''Amt on 127 page cr, F. G. S. I paid Pinney for as 230.00. He had them charged

to me. Sent pay by Bradley." This quoted portion, as were the items of account on that page, was in the handwriting of the plaintiff, and was there at the time that page was introduced as evidence. By "F. G. S." was meant F. G. Spaulding, the defendant. In connection with what is shown by the account on the two pages 158 and 198, the plaintiff testified in chief as to how the sum $1,039.12, named on the paper Ex. F, was arrived at in his settlement with Pinney. He was cross-examined on that subject at length; but he was not cross-examined regarding what appeared in pencil on the latter page (quoted above) touching page 127 and the $230, mentioned in connection therewith, which the plaintiff testified formed a part of the sum total, $1,039.12, given on Ex. F.

We think that, by proper cross-examination, all the facts shown by plaintiff's deposition attached to the petition for a new trial, might have been elicited, and for that reason, if for no other, such facts do not form a proper basis for the granting of a new trial on the ground of newly discovered evidence. *McClendon* v. *McKissack,* 143 Ala. 188, 38 South. 1020.

This disposes of all the so-called newly discovered evidence, leaving the petition without essential evidentiary support.

*Judgment affirmed. Petition for a new trial dismissed with costs.*